UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN BARDEN d/b/a FAST LANE AUTO,<br><br>     Plaintiff,<br><br>     v.<br><br>PAUL GOODSELL & XANTHE GOODSELL d/b/a P&X AUTO TRANSPORT; GREGORY SCHENK SR.; GREGORY SCHENK JR.; and SHEILA SHENK,<br><br>     Defendants. | Case No. 4:21-cv-00089-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Defendants Gregory Schenk Senior, Gregory Schenk Junior, and Sheila Schenk's (collectively the "Schenk Defendants") Motion to Dismiss (Dkt. 7) and Defendants Paul and Xanthe Goodsell, d/b/a P&X Auto's (collectively the "Goodsell Defendants") Motion to Dismiss (Dkt. 8). The Court heard oral argument on the motions on October 27, 2021, and took the matter under advisement.

Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Schenk Defendants' Motion to Dismiss (Dkt. 7) and GRANTS in PART and DENIES in PART the Goodsell Defendants' Motion to Dismiss (Dkt. 8).

## II. BACKGROUND

### A. Factual History[1]

Plaintiff John Barden sells cars through his New York business, "Fast Lane Auto." Beginning in 2012, Barden engaged "P&X Auto Transport," a business belonging to Defendant Paul Goodsell (hereinafter "Goodsell") and his wife, Xanthe Goodsell, to transport vehicles Barden bought at auctions in Idaho and other western states and deliver them to Fast Lane Auto in New York. In 2014, Goodsell offered to sell Barden a Peterbilt semi-truck bearing Vehicle Identification Number ("VIN") 1NP5LNB9X3YD522661 ("Peterbilt") and accompanying Delavan trailer bearing VIN 1D9AD4523YW371167 ("Delavan") for transporting vehicles. Barden and Goodsell orally agreed to a purchase price of $30,000.00, subject to Barden's ability to obtain financing.

Barden was unable to obtain financing because the Peterbilt and Delavan were titled in the name of "Cherry Creek Transport Inc.," rather than under Goodsell's or P&X Auto's name. Cherry Creek Transport Inc. is a dissolved Utah corporation registered in the name of Defendant Greg Schenk, Senior ("Schenk Senior"). When Barden was unable to obtain third-party financing, he and Goodsell agreed that Barden would instead make periodic wire transfers to Goodsell to purchase the Peterbilt and Delavan. Barden ultimately wired a total of $6,000.00 to Goodsell.

On April 23, 2014, Barden purchased a 2002 Dodge 2500 pickup bearing VIN 3B7KF23C22M274292 ("2002 Dodge") from a vehicle auction in Nampa, Idaho. On July

---

[1] The following facts are taken from Barden's Complaint and are accepted as true for purposes of the instant Motions. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

7, 2014, Barden purchased a 1991 Dodge D250 pickup truck bearing VIN 1B7KM2687MS245765 ("1991 Dodge") located in Logan, Utah. Barden retained Goodsell and P&X Auto Transport to collect the 2002 Dodge and 1991 Dodge and transport them to Fast Lane Auto.

In June 2014, Barden and Goodsell agreed to a trade in lieu of a straight cash transaction for Barden's purchase of the Peterbilt and Delavan. Under the terms of this new deal, Barden would trade the 2002 Dodge and $20,000.00 for the Peterbilt and Delavan. On July 25, 2014, Barden mailed the unsigned Idaho title to the 2002 Dodge to Goodsell as collateral, with the express understanding that Barden would sign the title over to Goodsell once Goodsell delivered the Peterbilt, Delavan, and 1991 Dodge to Fast Lane Auto. However, Barden and Goodsell continued to negotiate the details of their arrangement until February of 2015.

In January 2015, Barden sent an unexecuted document memorializing the terms of what he believed was the final agreement for his purchase of the Peterbilt and Delavan. Goodsell did not execute this document or propose any modifications to it. By April 2015, it became clear to Barden that Goodsell would not consummate the agreement. Thus, on April 1, 2015, Barden, through his attorney, demanded the return of his $6,000.00 in wire transfer payments, as well as the return of the 2002 Dodge and 1991 Dodge. On or about April 10, 2015, Barden obtained an Idaho duplicate title to the 2002 Dodge, making the unsigned copy of the title held by Goodsell invalid.

On April 29, 2015, Barden's attorney sent another demand for the return of Barden's funds and both trucks. Goodsell ignored the demands and, on or about May 12, 2015, sold

the Peterbilt to Laramie Goodsell—a third party. On June 2, 2016, Barden brought a civil suit against Goodsell in the Sixth Judicial District of Idaho, Franklin County, captioned *John Barden v. Paul Goodsell*, Docket No. CV-2016-194 ("State Court Action"). Barden asserted claims for breach of contract, unjust enrichment, conversion of the two Dodge trucks and his funds, and fraud in connection with the wire transfers. On June 26, 2017, the Honorable Mitchell Brown dismissed Barden's claims when Barden failed to appear for trial.

Following the dismissal of the State Court Action, Paul and Xanthe Goodsell (collectively the "Goodsell Defendants") did not return Barden's funds or Dodge trucks, and instead altered an earlier draft contract between Barden and Goodsell and forged Barden's signature on it. This "sham contract" purported to be a trade between Barden and Xanthe Goodsell, in which Barden supposedly traded the 2002 Dodge and $20,000.00 in exchange for the Peterbilt (which the Goodsell Defendants had already sold to Laramie Goodsell) and the Delavan. The Goodsell Defendants also fraudulently altered the unsigned (and invalid) title to the 2002 Dodge that Barden had mailed to Goodsell in 2015, to make it appear as though the title to the 2002 Dodge had been transferred to them.

The Goodsell Defendants then presented the sham contract and altered title to the 2002 Dodge to Defendants Sheila Schenk and Greg Schenk, Jr. ("JR and Sheila Schenk"), and sold them the 2002 Dodge.[2] On February 23, 2018, JR and Sheila Schenk brought the sham contract and altered title to the Utah State Division of Motor Vehicles, and obtained

---

[2] Although not alleged in his Complaint, Barden explains in his briefing that Sheila Schenk is Paul Goodsell's sister. Dkt. 18, at 5.

a Utah title to the 2002 Dodge in their names.

Barden alleges that he discovered the Goodsell Defendants' fraud in December 2020, after running a public records search on the 2002 Dodge. Barden subsequently filed the instant suit, and seeks the return of the 1991 Dodge, the 2002 Dodge, his $6,000.00 in wire payments, and compensatory and punitive damages.

## B. Procedural History

Barden filed the instant lawsuit on February 23, 2021. Dkt. 1. Against the Goodsell Defendants, Barden brings claims for civil fraud, violation of the Federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961(1), conversion and detinue, and replevin and conversion.[3] Barden also alleges a civil RICO claim against Schenk Senior, and a claim for replevin and conversion against JR and Sheila Schenk.

This case was initially assigned to District of Idaho Magistrate Judge Ronald E. Bush, but was reassigned to District of Idaho Magistrate Judge Raymond E. Patricco, Jr. on June 11, 2021, upon Judge Bush's retirement. Dkt. 10; Dkt. 11. On May 27, 2021, the Schenk Defendants filed a Motion to Dismiss Barden's claims. Dkt. 7. The Goodsell Defendants followed with their own Motion to Dismiss on June 2, 2021. Dkt. 8. After Judge Patricco granted the parties several extensions, both Motions to Dismiss became ripe on July 22, 2021. Dkt. 22; Dkt. 23.

---

[3] Detinue, replevin, and conversion are all causes of action concerning the wrongful use or possession of personal property. 1A C.J.S. Actions § 113 (October 2021 Update). Detinue and replevin both primarily seek return of the personal property, but replevin is based on a wrongful taking, while detinue is based on wrongful holding or retaining of the property. *Id.* Generally, a claim for conversion seeks damages for the value of the property, while replevin and detinue seek return of the property. 66 Am. Jur. 2d Replevin § 5 (August 2021 Update). In Idaho, the common law action of replevin has been superseded by statute and is now known as a cause of action for "claim and delivery." Idaho Code § 8-301.

MEMORANDUM DECISION AND ORDER - 5

The case was later transferred to the undersigned due to a lack of consent to proceed before a magistrate judge. The Court held a hearing on both Motions to Dismiss on October 27, 2021. Dkt. 35. During oral argument, Barden's counsel raised some allegations, and presented certain documents, that are outside of the pleadings. Although such information may be relevant upon amendment, or on summary judgment, the Court has not considered them for purposes of the instant Motions. *See, e.g., Nampa Classical Academy v. Goesling*, 714 F. Supp. 2d 1079, 1089 (D. Idaho 2010) ("Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6)").

### III. LEGAL STANDARDS

#### A. Rule 12(B)(6) Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully. *Id.*

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept unreasonable inferences or legal conclusions as true. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679.

In light of *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that when dismissing for failure to state a claim, a district court should grant leave to amend even if a request to amend the pleading has not been made, "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection*

*Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### B.  Rule 12(b)(1) Standard

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citations omitted). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* However, when "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citations omitted).

### C. Statute of Limitations

"When an affirmative defense is obvious on the face of a complaint . . . a defendant

can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ("[D]ismissal based on an affirmative defense is permitted when the complaint establishes the defense") (cleaned up). A complaint showing that the governing statute of limitations has run is the most common situation in which an affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6). *Rivera*, 735 F.3d at 902 (citation omitted). However, dismissal on this basis is only appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would establish timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

## IV. ANALYSIS

Although Barden's interaction with Goodsell preceded the alleged bad acts by the Schenk Defendants, the Court turns first to the Schenk Defendants' Motion to Dismiss, which was filed first, and then addresses the Goodsell Defendants' Motion to Dismiss.

### A. The Schenk Defendants' Motion to Dismiss (Dkt. 7)

The Schenk Defendants argue Barden's claims against them must be dismissed because: (1) Barden fails to meet his threshold burden of alleging facts to state claims for RICO, replevin, and conversion; (2) Barden's Complaint alleges facts which preclude relief on his claims; and (3) the statute of limitations has run on each of Barden's claims. With respect to Barden's claim against Schenk Senior, the Court must agree.

*1. Schenk Senior*

Barden brings a civil RICO claim against Schenk Senior. The Schenk Defendants argue this claim should be dismissed pursuant to Rule 12(b)(6) and because it is time-barred. The Court addresses each contention in turn.

a.   Failure to state a RICO Claim against Schenk Senior

Barden's sole allegation in support of his RICO claim against Schenk Senior states:

> Defendants Paul and Xanthe Goodsell also conspired with Defendant Greg Schenk, Sr. and the defunct enterprise of Cherry Creek Transport Inc. to commit wire fraud by inducing Plaintiff to wire monies from New York to Idaho on false pretenses, i.e., that Paul Goodsell was the sole owner of the Peterbilt Truck and Delavan trailer.

Dkt. 1, ¶ 53. Barden's Complaint, however, contradicts this allegation because Barden also alleges that he could not obtain third-party financing to purchase the Peterbilt and Delavan from Goodsell in 2014 because both vehicles were titled in the name of "Cherry Creek Transport Inc.," a company registered in the name of Schenk Senior. *Id.* ¶ 20. Nevertheless, Barden alleges that he thereafter agreed to, and made, periodic wire transfer payments to Goodsell to purchase the Peterbilt and Delavan. *Id.* ¶ 21. Because Barden appears to allege that he was aware the Peterbilt was titled in the name of "Cherry Creek Transport Inc. and not Paul Goodsell" *before* he agreed to make periodic wire transfer payments, Schenk Senior could not have conspired to induce Barden into wiring Goodsell funds under the false pretense that Goodsell was the sole owner of the Peterbilt. *Id.* at ¶¶ 20–21.

In addition to this inconsistency, Barden also fails to allege facts to suggest Schenk Senior engaged in racketeering. The elements of a civil RICO claim are: (1) conduct; (2)

of an enterprise; (3) through a pattern; (4) of racketeering activity[4] (known as "predicate acts"); (5) causing injury to the plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1961(c)). A "pattern of racketeering activity" requires at least two predicate acts within ten years of one another. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). "Two acts are necessary, but not sufficient" for finding a pattern of racketeering activity.[5] *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). "[T]he term 'pattern' itself requires the showing of a relationship between the predicates and the threat of continuing activity." *Id.* Barden not only fails to allege that Schenk Senior engaged in two or more acts of racketeering, but also, as explained above, has not identified a single predicate act in which Schenk Senior engaged or participated.

Further, the Ninth Circuit applies the particularity requirements of Federal Rule of Civil Procedure 9(b) to RICO claims. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (citations omitted). Rule 9(b) requires that the pleader state the time, place, and manner of each fraud, plus the role of the defendant in executing such frauds. *Id.* When multiple defendants are accused, each is entitled to a description of his own alleged wrongful acts. *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993).

Barden's single, conclusory allegation against Schenk Senior fails to specify the

---

[4] "Racketeering activity" is defined in 18 U.S.C. § 1961(1), and includes a number of indictable crimes, including wire fraud pursuant to 18 U.S.C. § 1343.

[5] The Ninth Circuit has held that a series of predicate acts related to one fraudulent scheme or criminal episode can constitute a pattern, so long as the predicate acts are not isolated or sporadic. *Sun Sav. and Loan Ass'n v. Dierdoff*, 825 F.2d 187, 192–93 (9th Cir. 1987).

time, place, or manner of Schenk Senior's alleged wire fraud, and does not provide any information regarding Schenk Senior's role in the alleged scheme. There are no facts to indicate Schenk Senior communicated in any way with the Goodsell Defendants regarding Barden or Barden's attempt to purchase the Peterbilt and Delavan. Nor are there facts to suggest Schenk Senior even knew who Barden was, let alone that Schenk Senior was aware of, or participated in, the alleged wire fraud. Barden's RICO claim against Schenk Senior is not alleged with particularity and is appropriately dismissed.

Although Barden could potentially amend to cure the aforementioned inconsistency and deficiency in his pleading, Barden's RICO claim against Schenk Senior is, as explained below, barred by the applicable statute of limitations. Under such circumstances, amendment would be futile and Barden's RICO claim against Schenk Senior is appropriately dismissed with prejudice.

   b.  <u>Statute of limitations on RICO claim against Schenk Senior</u>

"The statute of limitations for civil RICO actions is four years." *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001) (citing *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987)). The Ninth Circuit has "continuously followed the 'injury discovery' statute of limitations rule for civil RICO claims." *Pincay*, 238 F.3d at 1108 (citing *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996)). Under the injury discovery rule, "the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Grimmett*, 75 F.3d at 511.

In support of his civil RICO claim against Schenk Senior, Barden contends he was injured when the Goodsell Defendants conspired with Schenk Senior to commit wire fraud

by inducing him to wire funds from New York to Idaho under false pretenses. Dkt. 1, ¶ 53.

As the Schenk Defendants argue, Barden knew he was injured when he filed the State Court

Action against Goodsell for "fraud in connection with the wire transfers" on June 2, 2016.

Dkt. 7-1, at 7 (quoting Dkt. 1, ¶ 36). Thus, the statute of limitations began to run on June

2, 2016, and expired on June 2, 2020. Barden's Complaint in this case was not filed until

February 23, 2021—more than eight months later—and his claim for civil RICO is time-

barred.

　　Barden cannot escape this consequence by claiming Schenk Senior is a new party

because the question is when Barden suffered an injury, *Grimmett*, 75 F.3d at 511, and not

when Barden learned about another party's purported involvement. *Rotella v. Wood*, 528

U.S. 549, 555 (2000) ("[D]iscovery of the injury, not discovery of the other elements of a

claim, is what starts the [statute of limitations] clock."). Moreover, Barden cannot contend

he did not discover his claim against Schenk Senior until 2020 because, as noted, Barden

alleges he became aware that Schenk Senior's company owned the Peterbilt and Delavan

in the Spring of 2014, but that he nevertheless made wire transfers to Goodsell to purchase

the Peterbilt and Delavan sometime after March 27, 2014 through approximately February,

2015—more than six years before he filed the instant suit.

　　In his response to the Schenk Defendants' Motion to Dismiss, Barden argues their

statute of limitations argument "is fatally flawed because it confuses the civil RICO

***predicate act*** under 18 U.S.C. § 1961(a)(1)(B) with ***Plaintiff's injury***, which is the loss of

the 2002 Dodge." Dkt. 19, at 9 (emphasis in original). Barden suggests the loss of the 2002

Dodge "was not discovered until December 2020 when he performed a public records

search and discovered that the Goodsell Defendants had forged his signature and illegally altered the title of the 2002 Dodge in order to transfer it to the Defendants [Sheila] and Greg Schenk Junior." *Id.* at 9–10. While, in his briefing, Barden identifies the loss of the 2002 Dodge as his injury, Barden's Complaint does not allege Schenk Senior had any involvement with the Goodsell Defendants' alleged conversion of the 2002 Dodge. Instead, Barden's sole allegation against Schenk Senior is that he conspired with the Goodsell Defendants to commit wire fraud by inducing him to wire money from New York to Idaho under the false pretense that Goodsell was the sole owner of the Peterbilt and Delavan. Dkt. 1, at ¶¶ 21, 53. As such, the only injury Barden alleges with respect to Schenk Senior is the loss of his $6,000.00 in wire transfers. Barden knew about this loss, at the latest, when he filed the State Court Action to recover such funds on June 2, 2016.

Barden also argues the Schenk Defendants incorrectly focus exclusively on Schenk Senior's "individual conduct" and that they improperly urge the court to find that "the allegations as to him *individually* did not occur within the four (4)-year limitations period" when "the correct inquiry under civil RICO is whether Plaintiff brought suit within four (4) years of discovery of the injury caused by the actions of the *criminal enterprise* of which he was a part." Dkt. 19, at 10 (emphasis in original). This argument ignores that Barden has not identified even a single predicate act with respect to Schenk Senior, and thus has not alleged that Schenk Senior was a part of the Goodsell Defendants' purported criminal enterprise.

Further, even if Schenk Senior did participate in wire fraud, the Supreme Court has held that the statute of limitations begins to run when the plaintiff discovers the injury and

not when the plaintiff discovers the actions of the criminal enterprise. *Rotella*, 528 U.S. at 558 ("[T]ying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery . . . would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete[.]"); *see also Evans v. Arizona Cardinals Football Club, LLC*, 231 F. Supp. 3d 342, 348–49 (N.D. Cal. 2017) (rejecting plaintiffs' contention that the limitations period on their RICO claim could not start running until they knew that their injuries were caused by defendants' conduct). Since the only act Schenk Senior is alleged to have committed is wire fraud resulting in the loss of Barden's $6,000.00—of which Barden was clearly aware by June 2, 2016—the four-year statute of limitations for Barden's RICO claim against Schenk Senior has expired.

Because Barden was aware of the only injury resulting from Schenk Senior's alleged actions by at least June 2, 2016—more than four years before he filed the instant suit—it "appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of [his RICO] claim." *Von Saher*, 592 F.3d at 969. As such, even if Barden could cure his failure to state a civil RICO claim against Schenk Senior through amendment, the claim is time-barred and is appropriately dismissed with prejudice. *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1143 (D. Idaho 2014).

2.  <u>Claims against JR and Sheila Schenk</u>

Barden brings claims for replevin and conversion against JR and Sheila Schenk. The Schenk Defendants argue Baden fails to state a conversion or replevin claim, and that such claims are also barred by the statute of limitations. The Court disagrees.

MEMORANDUM DECISION AND ORDER - 15

a. Failure to state a conversion claim

Barden alleges JR and Sheila Schenk committed replevin and conversion because they "are wrongfully in possession of the 2002 Dodge by reason of the Goodsells' tortious conversion of Plaintiff's personal property." Dkt. 1, ¶ 62. The Schenk Defendants argue Barden alleges facts in his Complaint which, if accepted as true, preclude a conversion claim against JR and Sheila Schenk. For instance, Barden's Complaint contains multiple allegations to suggest that JR and Sheila Schenk were not involved with, and indeed, were entirely unaware of, the Goodsell Defendants' purported fraud. For instance, Barden alleges the Goodsell Defendants altered an earlier draft contract between Barden and Goodsell to suggest Barden traded the 2002 Dodge plus $20,000.00 to Goodsell in exchange for the Peterbilt. *Id.* ¶ 39. Barden also claims the Goodsell Defendants presented the "sham contract" with his forged signature, along with the fraudulently altered title to the 2002 Dodge, to JR and Sheila Schenk, and that JR and Sheila Schenk then purchased the 2002 Dodge. *Id.* ¶ 41. Later in his Complaint, Barden maintains the Goodsell Defendants "induce[d]" JR and Sheila Schenk to purchase the 2002 Dodge by presenting them with the sham contract and fraudulently altered title. *Id.* ¶ 48.

The Schenk Defendants contend that each of these facts show they did not wrongfully obtain the 2002 Dodge, and thus cannot be liable for conversion in Idaho, where a claim for conversion requires that the charged party *wrongfully* gained dominion of the converted property. Dkt. 7-1, at 14 (citing *Sallaz v. Rice*, 384 P. 3d 987, 990 (Idaho 2016) (emphasis added). Because they purportedly had no knowledge of, or involvement with, the Goodsell Defendants' fraud surrounding the 2002 Dodge, JR and Sheila Schenk assert

they have not wrongfully possessed the 2002 Dodge. Although, as the Court noted in *Sallaz*, 384 P.3d at 990,[6] "wrongful dominion" over the property is an element of conversion, "it is not necessary that the actor intends to commit a trespass or a conversion" instead, "the actor may be liable where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes." *Wiseman v. Schaffer*, 768 P.2d 800, 804 (Idaho Ct. App. 1989). This is because exercising dominion or control of property that is inconsistent with a plaintiff's right of ownership constitutes "wrongful" dominion. *Id.* at 803–04; *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d 605, 616 (Idaho 1999) (explaining a defendant's "intention, good or bad faith, and his knowledge or mistake are immaterial" when the defendant exercises control over property belonging to another).

While Barden argues the Court should apply Utah law because JR and Sheila Schenk reside in Utah, and conversion does not require conscious wrongdoing in Utah, *both* Idaho and Utah allow conversion claims against innocent purchasers. *Allred v. Hinkley*, 328 P.2d 726, 729 (Utah 1958) ("[A] bona fide purchaser of goods for value from one who has no right to sell them becomes a converter when he takes possession of such goods."); *Peasley Transfer & Storage*, 979 P.2d at 616 ("[W]here there has been a positive act of dominion over another's property, unauthorized by the owner, it is not necessary that the actor intend to commit a trespass or a conversion."). Thus, the facts suggesting that JR and Sheila Schenk were innocent purchasers of the 2002 Dodge do not relieve them of

---

[6] *Sallaz* did not hold that innocent purchasers cannot be liable for conversion, and, apart from stating the elements of a conversion claim, is entirely inapposite to the facts at issue in this case. 384 P.3d at 990–91.

liability for conversion under either Idaho or Utah law.

    b.  <u>Failure to state a replevin claim</u>

The common-law claim for replevin has been supplanted with a statutory cause of action for claim and delivery under Idaho Code sections 8-301–312. *Nat'l Motor Serv. Co. v. Walters*, 379 P.2d 643, 651 (Idaho 1963) (citations omitted). The claim and delivery statute has specific pleading requirements, including that: (1) the plaintiff must attach any written instruments upon which his claim to ownership of the property is based; (2) the plaintiff must allege the property is wrongfully detained by the defendant; and (3) the plaintiff must provide a statement of the property's actual value. Idaho Code § 8-302(a)–(c). The Schenk Defendants argue Barden's claim and delivery claim fails because: (1) he contends his interests in the Dodge trucks are the subject of written instruments, but failed to attach a copy of such instruments to the complaint; (2) Barden's acknowledgement that JR and Sheila Schenk were induced to purchase the 2002 Dodge precludes any allegation that they wrongfully detained the truck; and (3) Barden has failed to allege the value of the 2002 Dodge.

Barden argues Utah law—which does not appear to have such specific pleading requirements—instead applies. During oral argument, the Court advised the parties that it would allow them to brief whether Idaho or Utah law applies if the Court determined this issue was dispositive. However, because a conversion defendant in Idaho can still be deemed to have "wrongfully" gained dominion over the property even when they are an innocent purchaser, it follows that an Idaho defendant may also "wrongfully detain"

MEMORANDUM DECISION AND ORDER - 18

property without knowledge that the property is stolen.[7] Idaho Code § 8-302(b); *Wiseman*, 768 P.2d at 804. Further, the written instrument and value requirements could be cured by amendment if Idaho law applies. Thus, the Court rejects the Schenk Defendants' contention that Barden fails to state a claim for replevin and/or claim and delivery.[8]

      c.  <u>Statute of Limitations for conversion and replevin/claim and delivery</u>

      The Schenk Defendants also argue Barden's conversion and replevin/claim and delivery claims against JR and Sheila Schenk are barred by their respective statutes of limitations, which, in both Idaho and in Utah, are three years. *Freiberger v. Am. Triticale, Inc.*, 815 P.2d 437, 439 (Idaho 1991);  *Ockey v. Lehmer*, 189 P.3d 51, 59 (Utah 2008); Idaho Code § 5-218; Utah Code § 78B-2-305. They note a conversion claim accrues as soon as the property is wrongfully or willfully taken. Dkt. 7-1, at 8 (quoting *Freiberger*, 815 P.2d at 439). The Schenk Defendants highlight Barden acknowledges in his Complaint that he knew the 2002 Dodge truck had been wrongfully taken or retained by no later than April 1, 2015, that he made two unanswered demands for return of the 2002 Dodge on April 1 and April 29, 2015, and that he also filed a complaint on June 2, 2016, alleging the 2002 Dodge had been converted. The Schenk Defendants suggest JR and Sheila Schenck's subsequent purchase and possession of the 2002 Dodge is not a new act of conversion, but merely a continuation of the conversion of which Barden had knowledge in 2015, and on which he filed suit in 2016. Because the instant suit was not filed until 2021, the Schenk

---

[7] The Schenk Defendants do not cite any authority to the contrary.

[8] Of course, the parties may raise the choice of law issue on summary judgment if it appears to be dispositive, and, if appropriate, the Court may grant Barden leave to amend to attach the written instruments and to allege value in its summary judgment decision.

Defendants argue Barden's claims against JR and Sheila Schenk are well beyond the 3-year statute of limitations.

However, one who has acquired goods by theft cannot pass valid title to the stolen goods to the purchaser, even if the purchaser is a good faith or bona fide purchaser. 77A C.J.S. Sales § 400 (October 2021 Update). Thus, even where, as it appears here, property is sold to a bona fide purchaser for value, the person from whom it was stolen is not divested of his title, and may recover the right to repossess the stolen goods, or recover their value, from the innocent purchaser. *Id.*; *see also CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010) ("where a person entitled to possession demands it, the wrongful, unjustified withholding is actionable as conversion.") (citation omitted); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 960 (9th Cir. 2017) (explaining the general common law rule that one who purchases, no matter how innocently, from a thief, or all subsequent purchasers from a thief, acquire no title in the property because title always remains with the true owner).

Given this, various courts—including state courts in Idaho and Utah, have held that each time stolen property is transferred to a new possessor, a new tort or act of conversion occurs*. Hossner v. Idaho Forest Indus., Inc.*, 835 P.2d 648, 650 (Idaho 1992) (noting the defendant was liable for conversion because the defendant purchased plaintiff's property from a party with no authority to sell it, even though the defendant was unaware of the property's true ownership); *Allred*, 328 P.2d at 728 (holding that by taking possession of property from an individual who had no right to sell it, innocent purchaser converted such property to its own use); *see also Piper v. Gooding & Co. Inc.*, 334 F. Supp. 3d 1009, 1022

(D. Ariz. 2018) ("Under California law, each time stolen property is transferred to a new possessor, a new tort or act of conversion has occurred") (citation omitted). Thus, it appears that in both Idaho and in Utah, JR and Sheila Schenk's purchase of the 2002 Dodge—even if entirely innocent—was a new act of conversion. Because this purchase occurred on February 23, 2018, exactly three years before Barden filed his Complaint on February 23, 2021, the statute of limitations does not bar Barden's conversion, replevin, and/or claim and delivery claims against JR and Schenk Senior.

     d.  <u>Conclusion</u>

Barden fails to allege a RICO claim against Schenk Senior. Moreover, Barden's own allegations establish "beyond doubt that [he] can prove no set of facts that would establish the timeliness" of his RICO claim against Schenk Senior. However, the same cannot be said of Barden's claims against JR and Sheila Schenk, which were filed within the three-year statute of limitations and are adequately alleged. As such, and as detailed in the Order section of this Decision, the Schenck Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART.

**B.  The Goodsell Defendants' Motion to Dismiss (Dkt. 8)**

In their Motion to Dismiss, the Goodsell Defendants argue the Court lacks subject matter jurisdiction because, on their face, Barden's claims do not meet the amount in controversy requirement of the diversity jurisdiction statute. They also contend Barden

fails to state a civil RICO claim.[9]

    a. <u>Amount in controversy</u>

As a threshold matter, the Court need not spill much ink on the Goodsell Defendants' argument regarding the amount in controversy because, regardless of whether the Court has diversity jurisdiction, it has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since Barden alleges a federal RICO claim against the Goodsell Defendants. Even if the Court dismisses Barden's RICO claim pursuant to Rule 12(b)(6), it still has discretion to exercise supplemental jurisdiction over Barden's state law claims. 28 U.S.C. § 1367(c)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining that when a federal court grants a motion to dismiss for failure to state a federal claim, the court retains discretion to exercise supplemental jurisdiction over pendant state law claims). The Goodsell Defendants inexplicably ignore that the Court has federal question jurisdiction, and similarly do not address Barden's argument regarding the Court's discretion to exercise supplemental jurisdiction over his state-law claims regardless of whether or not diversity jurisdiction exists.

Moreover, while the Goodsell Defendants argue the amount in controversy is $21,661.00 (the purported Kelly Bluebook value of the two trucks plus Barden's $6,000.00

---

[9] In their Motion to Dismiss, the Goodsell Defendants initially suggested, without briefing, that Barden's claims against them are also barred by res judicata. The Goodsell Defendants included Barden's State Court Complaint and Judge Brown's Memorandum Decision and Order Denying Barden's Motion to Set Aside Judgment with their Motion to Dismiss. Dkt. 9-3; Dkt. 9-4. However, in their reply brief, the Goodsell Defendants did not address Barden's arguments regarding res judicata and the impropriety of considering matters outside of the pleadings at this stage of the proceedings, and, during oral argument, stated they would instead raise their res judicata argument later on summary judgment. Accordingly, the Court will not consider the Goodsell Defendants' res judicata defense at this time.

in wire transfers), the appropriate valuation of the vehicles is a factual matter that cannot be resolved based on two hyperlinks to the Kelly Bluebook website. *See* Dkt. 9-1; Dkt. 9-2. Further, Barden also alleges he suffered additional damages beyond the loss of his trucks and funds, such as damages for pain and suffering, which the Goodsell Defendants do not address.

When ruling on a jurisdictional motion involving factual issues which also go to the merits, the court "should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits." *Augustine*, 704 F. 2d at 1077 (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733–34 (9th Cir. 1979)). "Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact." *Augustine*, 704 F.2d at 1077. Here, the material jurisdictional facts are in dispute, and the Court lacks sufficient information to determine the amount in controversy. As such, the Court cannot find, with "legal certainty," that Barden fails to meet the $75,000.00 jurisdictional amount required to establish diversity jurisdiction.[10] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); 28 U.S.C. § 1332.

---

[10] The Court recognizes that it may need to consider whether it should exercise supplemental jurisdiction over Barden's state law claims if his amended RICO claim against the Goodsell Defendants is dismissed and the amount in controversy proves insufficient. *Augustine*, 704 F.2d at 1077 ("The defense of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction."). For the reasons explained above, such assessment is premature at this stage of the proceedings.

b.  Rule 12(b)(6)

The Goodsell Defendants contend Barden fails to state a civil RICO claim—they do not address Barden's fraud, conversion and detinue, and conversion and replevin claims against them.[11] With respect to Barden's RICO claim, the Goodsell Defendants contend Barden has not adequately alleged a pattern of racketeering activity. To allege a "pattern of racketeering," Barden must not only identify at least two acts of racketeering, but must also show that the predicate acts are related "*and* that they amount to or pose a threat of continued of continued criminal activity."[12] *H.J. Inc v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (emphasis in original). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (emphasis in original) (citation omitted).

A "relationship" between predicate acts is established if the criminal conduct has "the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. The Supreme Court has explained the continuity requirement "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at

---

[11] Because they do not raise the statute of limitations as an affirmative defense in their Motion to Dismiss, the Court does not address this issue at this time with respect to the Goodsell Defendants.

[12] The Goodsell Defendants also fault Barden for citing 18 U.S.C. § 1961(a)(1)(B) in his Complaint, which is the "Definitions" section of RICO. Dkt. 9, at 12. Barden clarified in his Response brief that this citation was a typographical error, and should read "18 U.S.C. § 1961(1)." Dkt. 18 at 17 n. 3.

242. When a RICO action is brought before continuity can be established in this way, a plaintiff can show continuity if the related predicates "include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity." *Id.*

In arguing Barden has failed to allege a pattern, the Goodsell Defendants first suggest "the only 'conduct' pointed to by Plaintiff is the alleged fraudulent signing of a deed and a contract between the parties, and Plaintiff has identified no portion of that contract that is not fully in accordance with the understanding between the parties." Dkt. 9, at 14. This contention ignores that the agreement which Goodsell purportedly forged was never consummated. Even if the contract was fully in accordance with the understanding between the parties, Goodsell never acted upon it, and instead kept Barden's $6,000.00 and both the 1991 and 2002 Dodge, while also selling the Peterbilt and Delavan to his apparent relative, Laramie Goodsell.

The Goodsell Defendants next maintain that Barden "has demonstrated no 'conduct' other than this alleged fraudulent signing" and "has not given any indication of how Defendants allegedly 'altered' the title to the 2002 Dodge." *Id.* at 14. This contention illustrates two predicate acts: fraudulently signing the contract to make it appear as though the 2002 Dodge belonged to the Goodsell Defendants, and forging the 2002 title to the 2002 Dodge in order to sell it to JR and Sheila Schenk. *See* 18 U.S.C. § 1961(1) (identifying a violation of 18 U.S.C. § 1028, which criminalizes fraud and related activity in connection with identification documents and authentication features, as a RICO predicate act). The Complaint also clearly alleges that the Goodsell Defendants forged Barden's signature on

the blank title to the 2002 Dodge that Barden had mailed them in 2015 as collateral for his intended purchase of the Peterbilt and Delavan—a transaction which never took place. Dkt. 1, ¶¶ 40–41. The latter contention illustrates how the Goodsell Defendants purportedly altered the title to the 2002 Dodge: by forging Goodsell's signature on the blank title.[13]

Barden alleges the Goodsell Defendants committed another predicate act when, three years before the aforementioned conduct, they conspired with Schenk Senior to commit wire fraud by inducing Barden to wire money from New York under the false pretense that Goodsell was the sole owner of the Peterbilt Truck and Delavan trailer. *Id.* at ¶ 53. As explained above with respect to Schenk Senior, Barden's Complaint contradicts this allegation because he also alleges that he was unable to obtain financing, and agreed to send Goodsell periodic payments via wire transfer, because the Peterbilt and Delavan were titled in the name of "Cherry Creek Transport Inc." and not Goodsell. *Id.* ¶ 20. Barden could not be induced to wire funds under the false pretense that Goodsell was the sole owner of the Peterbilt and Delavan when he agreed to make periodic wire payments to Goodsell *after* he learned that Goodsell was not the owner of such vehicles. Barden has thus identified only two predicate acts[14]—fraudulently signing the contract and forging Barden's signature on the blank title to the 2002 Dodge—which both appear to have taken place shortly before Barden "sold" the 2002 Dodge to the Schenk Defendants after the

---

[13] Although the Goodsell Defendants do not raise the point, the Complaint does fail to identify how Xanthe Goodsell purportedly participated in the relevant forgeries.

[14] In his response to their Motion to Dismiss, Barden suggests the Goodsell Defendants "may have participated in and facilitated the transportation of a stolen vehicle, i.e., the 2002 Dodge, across state lines in violation of 18 U.S.C. § 1312." Dkt. 18, at 18. This allegation does not appear in the Complaint. If Barden can identify facts to support it, he can include the allegation and supporting facts upon amendment.

dismissal of the State Court Action.[15]

Although Barden has alleged two events that are related in that they share the same participants, victim, purpose (converting Barden's funds and the 2002 Dodge), and method of commission (forgery), he has not shown continuity. Barden has not alleged a series of related predicate acts extending over a substantial period of time. Nor has he identified any facts to suggest either a distinct threat of long-term racketeering activity, a specific threat of repetition extending indefinitely into the future, or that the predicate acts are a part of the Goodsell Defendants' regular way of doing business. *H.J. Inc.*, 492 U.S. at 242. As such, Barden's Complaint fails to adequately allege a pattern of racketeering activity and thus fails to state a RICO claim against the Goodsell Defendants. However, because Barden may have a colorable claim against the Goodsell Defendants if he can plead a RICO claim with the requisite particularity and adequately allege continuity between predicate acts, the Court will dismiss Barden's RICO claim against the Goodsell Defendants without prejudice and grant him leave to amend his Complaint.

## V. CONCLUSION

In sum, Barden fails to state RICO claims against either Schenk Senior or the Goodsell Defendants. While the Court will allow Barden leave to amend his Complaint to state a RICO claim against the Goodsell Defendants, his RICO claim against Schenk Senior is time-barred and is dismissed with prejudice. Barden has adequately alleged claims for conversion and replevin against JR and Sheila Schenk, and such claims do not appear to

---

[15] Again, while also not raised by the Goodsell Defendants, the Complaint does not adequately identify when these purported forgeries took place.

be time barred. Finally, the Court finds that it has subject matter jurisdiction based on the facts currently alleged.

## VI. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. The Schenk Defendants' Motion to Dismiss (Dkt. 7) is GRANTED in PART and DENIED in PART:

   a. It is **GRANTED** with respect to Barden's RICO claim against Schenk Senior, which is **DISMISSED with prejudice**. Schenk Senior is dismissed as a defendant in this action;

   b. It is **DENIED** with respect to Barden's conversion and replevin/claim and delivery claims against JR and Sheila Schenk;

2. The Goodsell Defendants' Motion to Dismiss (Dkt. 8) is also GRANTED in PART and DENIED in PART;

   a. It is **GRANTED** with respect to Barden's RICO claim, which is **DISMISSED without prejudice**;

   b. It is **DENIED** with respect to each of Barden's other claims against the Goodsell Defendants since the Court finds it currently has subject matter jurisdiction and the amount in controversy cannot be resolved at this time;

3. Barden may file an amended complaint within thirty (30) days of the date of this order to include his RICO claim against the Goodsell Defendants. Failure to file an

amended complaint within the allotted time may result in dismissal of his RICO

claim against the Goodsell Defendants with prejudice.

DATED: December 15, 2021

David C. Nye
Chief U.S. District Court Judge